JOSEPH FREAS, PROSECUTOR, v. CITY OF CAPE MAY.

Argued June 2, 1908—Decided November 9, 1908.

In order to entitle a police officer to the benefit of the Tenure of Office act of 1899 (*Pamph. L., p.* 26), he must have been employed as a regular member of the police force; but one appointed under the second proviso of section 1 of that act, in cases of emergency or for parts of a year, may be discharged without having charges preferred against him or a hearing thereon.

On *certiorari.*

Before Justices REED, BERGEN and VOORHEES.

For the prosecutor, *Norman Grey.*

For the defendant, *J. Spicer Leaming.*

The opinion of the court was delivered by

BERGEN, J. The prosecutor seeks a writ of *certiorari* for the purpose of reviewing the action of the common council of the defendant municipality in discharging him from its police force. The claim of the prosecutor is that, under an act regulating the tenure of office of cities (*Pamph. L.* 1899, *p.*

26), he cannot be lawfully discharged without charges having been made against him, and without being permitted a hearing thereon. It is admitted that he was discharged on October 2d, 1906, by a resolution of the common council without the presentation of any charge.

The act of 1899 provides that "the officers and men employed in the police department of every city shall severally hold their respective offices during good behavior, efficiency and residence in the city where employed, and no person shall be removed from office or employment in the police department of any city for political reasons, or for any other cause than incapacity, misconduct, non-residence or disobedience of just rules and regulations; * * * *provided further,* that it shall be lawful for the board, body or persons in the respective cities of this state having authority to employ members of the police department therein, to employ officers or men temporarily in cases of emergency or for parts of years in cases where their services are not needed throughout the entire year, and discharge them at the expiration of such temporary employment."

The third section of the act provides that no officer or employe in the police department of any city shall be removed from office except for just cause, and then only after a legal charge, stating the cause of complaint, shall have been preferred against such officer, and after the said charge shall have been publicly examined into by the proper board or officer upon reasonable notice to the person charged. Under this act if the prosecutor was employed in the police department of the city and not employed under the proviso authorizing the employment of officers or men temporarily in cases of emergency or for parts of years, then he is entitled to his writ. The only question to be passed upon is in which class was he employed, for it is clear that the act limits the tenure of office to persons regularly appointed without limitation as to term, but does not apply to persons temporarily appointed or to those appointed for special purposes.

The prosecutor does not claim that he was regularly appointed for an indefinite term, and the record of his appoint-

ment taken from the minutes of the common council shows
that on June 2d, 1904, the common council elected summer
police officers from names submitted by the mayor, and among
the persons so elected was the prosecutor. The case shows
that in the city of Cape May persons are temporarily ap-
pointed as summer policemen. This term has, in Cape May,
a definite meaning, namely, special officers employed about
the 1st of June in each year, who are discharged at the pleas-
ure of the common council. The prosecutor went into office
and continued to serve as a policeman until October 2d, 1906.
The minutes of the common council show that in June, 1905,
the prosecutor's name was sent to the council by the mayor
as an applicant for a position as summer policeman, and that
he was then elected to that office; that on April 3d, 1906, a
resolution was adopted by the council that the prosecutor and
other persons be discontinued as officers, and on the same day
he and others were elected special officers to serve until July
1st, 1906, and that on June 5th, 1906, he was elected to serve
"until September 15th, or sooner." He was regularly dis-
charged by the resolution complained of in October, 1906.
Against this record the prosecutor testified that, although his
claim was submitted by the mayor to the common council as
an applicant for the position of summer policeman, as indi-
cated by the minutes, he did not in fact make any application
to the mayor to have his name submitted to the common coun-
cil, but there is evidence showing that after his name was sub-
mitted to the council, he applied to some of the members for
their votes in confirmation of his appointment. The prose-
cutor rests his right to this writ upon the claim that, although
he was not appointed in the first instance as a regular mem-
ber of the police force for an indefinite term, that because he
was not discharged at the end of the summer of 1905, he held
over, and that he thereby became a regular appointee entitled
to the benefit of the act of 1899. The evidence leaves no
doubt in our minds that it was not the intention of the com-
mon council, or the understanding of the prosecutor, that he
was appointed a member of the regular police force, but, on
the contrary, that he was an appointee under the proviso con-

tained in the first section authorizing the employment and discharge of policemen temporarily in cases of emergency or for parts of years in cases where their services were not needed throughout the entire year. That they did not discharge him at the end of the summer season, but permitted him to continue his services for a longer period, does not change the distinct terms of his employment. There is, of course, a presumption of law that persons dealing with the official of a municipality, who is serving the city in a particular capacity, that he was regularly appointed even where no official act making the appointment can be shown, but that presumption would not exist in any dealing between the city and its official when the foundation of the officer's right to hold office is limited by a resolution which, on its face, discloses that the appointment was special and not general.

The conclusion which we have reached is that the writ ought not to go because the affidavits upon which this application is based show that the original appointment was temporary in its character, and nothing appears to show that there was not a case of emergency requiring his continuance in office beyond the summer season of 1904.

The application for the writ of *certiorari* is denied, with costs.