## STATUS UNDER THE CIVIL SERVICE OF A MUNICIPAL EMPLOYEE APPOINTED TEMPORARILY IN 1912.

Court of Appeals for Hamilton County.

STATE OF OHIO, ON THE RELATION OF GERHARD FISCHER, v. PHILIP FOSDICK, DIRECTOR OF PUBLIC SERVICE OF THE CITY OF CINCINNATI.

Decided, May 8, 1916.

*Civil Service—Service of a Temporary Employee in the Municipal Service—Not Automatically Dispensed with by the Filing of an Eligible List, When—No Rights Waived by Taking a Competitive Examination, When—No Prejudice Arises from Failure to File an Explanation—Section 4488.*

One who was given a temporary appointment to the municipal service during the year 1912 and prior to the furnishing of an eligible list by the civil service commission, was an incumbent at the time the civil service law of 1913 went into effect, and was entitled to hold his position until he failed to qualify therefore or was discharged for cause.

*Moulinier, Bettman & Hunt,* for relator.

*Charles A. Groom,* City Solicitor, and *Saul Zielonka,* Assistant City Solicitor, contra.

GORMAN, J.

The relator, Gerhard Fischer, avers in his amended petition that on the 16th day of May, 1912, the mayor of the city of Cincinnati, to prevent the stoppage of public business, appointed him temporarily to the position of machinist of the filtration plant of the subdepartment of waterworks in the city of Cincinnati; that he continuously occupied said position and performed the duties thereof up to and including November 9, 1914; that his occupancy of said position and the performance of the duties thereof were in accordance with and in pursuance of the orders of the du.. public service of the city of Cincinnati

duly issued and made in the course of the management by that
director of said waterworks; that at the time he was appointed
to said position the same was and has ever since been and is
now in the classified service of said city; that no examination for
said position, competitive or non-competitive, was ever held or
given by the civil service commission of said city until the
11th day of September, 1914; that on said day a competitive
examination was held for all the positions of machinists of the
subdepartment of waterworks of said department of public
service, such examination covering the said position occupied by
the relator as well as many other positions of machinists in said
waterworks; that the relator took and passed said competitive
examination; that the civil service commission of the said city
has never held or fixed any time for a non-competitive examina-
tion for relator of said position; that about November 6, 1914,
an eligible list for the positions of machinists in said subdepart-
ment of waterworks was made up by said civil service commis-
sion from the list of those who passed said examination; that on
the 6th day of November, 1914, the said Philip Fosdick, then
director of public service, issued and furnished relator with a
copy of a pretended order of discharge to be effective November
9, 1914, containing as the exclusive and sole reason for the same
the following: "for the reason he is a temporary appointee
and civil service commission now has an eligible list;" that
the eligible list referred to is the eligible list produced as the
result of said examination of September 11, 1914; that since
the 9th day of November, 1914, said Fosdick as director of pub-
lic service, and his successor, Charles F. Hornberger, has re-
fused to recognize relator as the occupant and incumbent of said
position, and has refused to assign relator any work in said
position or to permit him to do any work in said position,
but has made an appointment of another person in place and
stead of relator to perform the work of said position; that the
director of public safety is the appointing officer of said posi-
tion, and that at the time relator was laid off or discharged as
aforesaid said director of public safety did not furnish relator
with a copy of an order of discharge, lay-off, reduction or sus-

pension, or with any reasons for the same except the above-named order and reasons of November 6, 1914. Relator prays that a writ of mandamus may issue ordering the director of public safety to recognize the relator as, from and after November 9, 1914, the incumbent and occupant of said position of machinist at the filtration plant at the waterworks.

To this amended petition of relator an answer was filed admitting most of the allegations of the petition; and admitting especially that the defendant, the director of public safety, issued and furnished relator with a copy of an order of discharge to be effective November 9, 1914, containing as the sole and exclusive reason for the same the following: "for the reason that he is a temporary appointee and civil service commission now has an eligible list," the same reason set forth in relator's petition. The defendant further says that relator on August 29, 1914, made application for competitive examination for the position of machinist in the division of waterworks of the department of public service, pursuant to the ordering of and advertising same by the civil service commission of the city; that said examination was conducted according to law; and that relator pursuant to his application for admission to said examination appeared and took the same and received an average of seventy-one per cent., and the rank of nineteenth on the eligible list, which was approved and posted September 25, 1914, as required by the statutes and rules of the civil service commission in such case made and provided; that on November 7, 1914, relator was served with personal written notice that he was discharged for the reason that he was a temporary appointee and the civil service commission then had an eligible list and that his discharge would be effective November 9, 1914, at five o'clock P. M., and that he might make and file his explanation with the director of public service. Defendant further avers that the eligible list referred to in said order and reasons for discharge was the eligible list produced as a result of the examination held September 11, 1914, at which relator competed. The defendant further avers that the relator has not made or filed any explanation whatsoever. Defendant further avers in his answer that on

November 6, 1914, a regular requisition to fill the vacancy ·in the position formerly held temporarily by relator was made by the director of public service as required by the statutes in such case made and provided, and three names from said list having higher grades and averages than the relator certified by the civil service commission from the eligible list for the position formerly held temporarily by relator, and from said eligible list and certification of the civil service commission of three persons qualified therefor the said director of public service made an appointment to fill the vacancy on November 10, 1914, as required by the statutes in such case made and provided. The defendant further says that in March, 1912, the said civil service commission by a unanimous vote of the members of said commission in regular meeting adopted rules and regulations, among which is Rule 74, reading as follows:

"74. A temporary appointment to prevent the stoppage of public business or to meet extraordinary exigencies shall continue only until such time as the commission can certify persons from an appropriate eligible list to fill the vacancy."

Defendant therefore prays that the petition and the amended petition be dismissed.

A demurrer has been filed to this answer for the reason that the allegations thereof are not sufficient in law to constitute a defense.

A demurrer was filed to the answer to the original petition, and came on to be heard before Judges Spence and Pollock while they were sitting as judges in this district. And upon arguments and presentation of the law those judges found that the demurrer searched the record, and that the petition was insufficient in law and therefore sustained a demurrer to the petition and gave relator leave to file an amended petition, which was accordingly done. In the amended petition relator has sought to meet some of the objections made by the visiting court in sustaining the demurrer to the petition.

The first question to be determined is whether or not Fischer was legally removed or separated from his position or appointment. At the time this temporary appointment was made in

1912 many places in the city service were not in the classified list. Under the provisions of Section 4488, General Code, as it existed when Fischer was appointed, there was no eligible list from which an appointment could be made because the civil service commission had not held an examination and furnished such a list, and under the section above cited the appointing power was authorized to make a temporary appointment.

In 1913 the civil service law was amended so as to bring within its protection very many persons who previous to the adoption of the law were not on the eligible list. Under the law of 1913 (103 O. L., 703), it was provided, among other things, in Section 10, that:

"The incumbents of all offices and places in the competitive classified service, except those holding their positions under existing civil service laws, shall, whenever the commission shall require, and within twelve months after the rules adopted by the commission go into effect, be subject to non-competitive examinations as a condition of continuing in the service. Reasonable notice of all such non-competitive examinations shall be given in such manner as the commission may require, and all such non-competitive examinations shall conform in character to those of the competitive service."

As has been stated, when Fischer was appointed there was no eligible list, and during the time that he occupied the position down to September, 1914, the civil service commission had failed to conduct a non-competitive examination or to give him an opportunity to submit to such an examination. The question presented is whether or not he was an incumbent of his place at the time the civil service law of 1913 went into effect? He was entitled to hold his position until he had been given an opportunity to take a non-competitive examination. It was not his fault that he did not take such examination but it was the fault, if any, of the civil service commission of the city.

We are of the opinion that the proper construction to be placed on Section 10, of the law of 1913, is that Fischer was an incumbent of the place he occupied at the time this law went into effect, and as such he was protected by the civil service law and entitled to hold his position until he failed by either

a competitive or a non-competitive examination. In view of the fact that the character of the non-competitive examination shall be the same as that of the competitive examination, we see no reason why Fischer, when he passed the examination in 1914, although that was a competitive examination, should not be entitled to hold as though he had passed a non-competitive examination.

By the provisions of Section 17 of the civil service law of 1913:

"No person shall be discharged from the classified service * * * laid off, suspended or otherwise discriminated against by the appointing officer for religious or political reasons. In all cases of discharge, lay-off * * * or suspension * * * whether appointed for a definite term or otherwise, the appointing officer shall furnish the subordinate discharged, laid off * * * or suspended with a copy of the orders of discharge, lay-off * * * or suspension, and his reasons for the same, and give such subordinate a reasonable time in which to make and file an explanation."

Under the civil service law of 1913, as we read it, there were two classes of incumbents: those who had been appointed under the civil service law theretofore existing, who had taken the examination or who had otherwise been appointed in conformity to the law; and those who had been appointed without an examination as temporary appointments. Section 10, of the law of 1913, requires all those persons who had been temporarily appointed, as a condition of their continuance in the service, to take a non-competitive examination which should be of the same character as a competitive examination; all those persons who were in classified service who had taken an examination under the civil service law as it existed prior to the law of 1913 were protected and not required to take another examination. There were two classes of incumbents—those who had been appointed without an examination, and those who held by virtue of an examination taken under a previous civil service law.

In our opinion, therefore, Fisher was entitled to hold his place until he failed to pass a competitive or non-competitive examination, or unless he was discharged for some cause or reason.

The Moores-Barnes law was passed and became effective September 1, 1915, about ten months after the discharge of Fischer and after this suit was commenced. Under this law no person is entitled to hold his place unless he has submitted to and passed a competitive examination, or unless he had been in the public service for at least seven years. When this law went into effect Fischer could have been discharged, because it is admitted that he had not been in the service for seven years, nor had he passed successfully, as one of the three highest a competitive examination. But at the time Fischer was discharged or released from the service the Moores-Barnes law was not in effect and that law can not be invoked, in our opinion, to aid the defendant in his action in discharging Fischer.

It is claimed that by taking the competitive examination in 1914, Fischer waived his right to have the non-competitive examination. This court is of the opinion that Fischer did not waive his right to hold the position, by taking a competitive examination. A person who is in the service, and who has been duly appointed after taking a successful examination, may nevertheless take a competitive examination for any position in the city service without waiving his right to hold his place or position.

*Non constat* but Fischer when he took a competitive examination was anxious to learn whether or not he would be eligible to appointment to some other place or position than that which he held in the city service. He was given no option to take a noncompetitive examination or a competitive examination, and therefore we are unable to see how he waived any right when the option was not given him to take a non-competitive examination.

Further, it is claimed that by failing to give an explanation after he was released from the public service he is not entitled to maintain this action. No explanation which Fischer could give would affect his case. He was not removed from the service or discharged because of any conduct on his part, but because of the construction placed on the law of 1913 by the director of public service. His construction of the law was that as soon as an eligible list was furnished for the position which Fischer

occupied he thereby automatically ceased to hold his temporary position, notwithstanding the fact that he had not been given an opportunity to take a non-competitive examination. The construction placed upon the law of 1913 by the director of public service was that Fisher was not an incumbent of the office within the meaning of the law at the time the law of 1913 became effective. In this construction the court is not in accord with the director of public service. As has been stated above, we are of the opinion that he was an incumbent at the time the law of 1913 went into effect, and was entitled to the protection afforded him by that law.

The defendant further sets up the rule of the civil service commission passed in 1912, to the effect that temporary appointments shall continue until there is an eligible list. This rule was adopted under the civil service law as it existed prior to the taking effect of the law of 1913. The rules of the civil service commission could only apply to the state of law as it existed when the rules were adopted, that is, the law in force prior to 1913. A rule of the civil service commission inconsistent with the law of 1913 must necessarily fall when that law became effective, and therefore the rule invoked by the defendant, in force in 1912, could not aid the defendant in ousting the relator from his position because that rule was abrogated when the civil service law of 1913 went into effect making Fischer an incumbent.

Counsel for defendant cited to us the case of *Shelvoy* v. *Fletcher*, 84 N. J. Law, 547, in support of his contention that Fischer was not an incumbent at the time the law of 1913 went into effect. We have read the case and the facts upon which the law of that case was enunciated, and we are unable to see how it applies to the case before us.

Upon a full consideration of the case, together with a consideration of the decision of Judges Spence and Pollock, this court has reached the conclusion that the demurrer of the relator to the answer filed to the amended petition should be sustained, as the same does not present a defense.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.